**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**CHARLES JEREMIAH BRACEY**                                          **PLAINTIFF**

**V.**                                          **CIVIL ACTION NO.  3:12CV323 HTW-LRA**

**CAROLYN W.  COLVIN,**
**ACTING COMMISSIONER OF SOCIAL SECURITY**                   **DEFENDANT**

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Charles Bracey, proceeding *pro se*, appeals the final decision denying his

application for Supplemental Security Income ("SSI"), and moves to modify the

administrative record submitted on appeal.  The Commissioner requests an order pursuant

to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge.

Having carefully considered the hearing transcript, the medical records in evidence, and

all the applicable law, the undersigned recommends that the decision be affirmed for the

reasons that follow.

**Factual and Procedural Background**

On July 23, 2009, Bracey protectively filed an application for SSI alleging that he

became disabled on September 1, 2007.  The application was denied initially and on

reconsideration.  He appealed the denial and on December 17, 2010, Administrative Law

Judge Edwin E. Kerstine ("ALJ") rendered an unfavorable decision finding that Plaintiff

had not established a disability within the meaning of the Social Security Act.  The

Appeals Council denied Plaintiff's request for review and he now appeals that decision.

Bracey has a tenth grade education and was approximately 35 years old when he filed his application for benefits.  He alleges disability due to a gunshot wound he sustained in 1997, though records indicate that he later returned to work.  He has past relevant work experience as a loader, delivery driver, dishwasher, and cook.  He also testified that he stopped working in 2006 because of transportation problems and has not looked for work since that time.[1]

After reviewing the evidence, the ALJ concluded that Plaintiff was not disabled under the Social Security Act.  At step one of the five-step sequential evaluation,[2] the ALJ found Plaintiff had not engaged in substantial gainful activity since the date of his application, July 23, 2009.  At steps two and three, the ALJ found that although his history of a gunshot wound to his left leg was severe, it did not meet or medically equal any listing.  At step four, the ALJ found that Plaintiff could not return to his past relevant work, but has the residual functional capacity to:

> perform light work as defined in 20 C.F.R. § 416.967 (b) except the claimant could walk/stand no more than three hours; he can lift twenty pounds occasionally and ten pounds frequently; the claimant has a slight limitation in pushing/pulling; the claimant cannot climb ropes, ladders or scaffolds; he can occasionally climb stairs, steps and ramps; the claimant can occasionally bend, stoop, crawl, squat, crouch and twist; the claimant

[1]ECF No. 11-2, pp. 18-46.

[2]Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform?  *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

has no limitation with right arm and hand; he can occasionally grasp, handle, hold with his left hand; the claimant must avoid industrial hazardous and moving mechanical parts; he cannot climb in the workplace; and he cannot operate machinery requiring foot control on the left side.

Based on vocational expert testimony, the ALJ concluded at step five, that given Plaintiff's age, education, work experience, and residual functional capacity, he could perform work as a door greeter, assembler, and lot attendant.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## Discussion

Plaintiff contends on appeal that the ALJ erred in denying his application for benefits. He advises that his 1997 gunshot wound required extensive medical treatment

for approximately four months, and that the SSI benefits he received as a result were terminated in 2003 or 2004.  He alleges that the ALJ erred in denying his most recent application because he continues to experience excruciating pain in his left leg and foot, which prevent his return to work.  In support, he files a Motion to Amend/Correct the Record to include evidence relating to his prior application and cessation of benefits.  He also maintains that the record is incomplete because it fails to include his underlying application for SSI benefits.  For the reasons set forth below, the Court finds the ALJ's decision comports with all relevant legal standards and is supported by substantial evidence.

Applying the severity standards set forth in *Stone v. Heckler,* 752 F.2d 1099 (5th Cir. 1985) and 20 C.F.R. § 416.920(c), the ALJ concluded that although Plaintiff's leg pain was a severe impairment, it did not preclude him from performing a reduced range of light work.[3]  In making this determination, the ALJ considered both the objective medical evidence and Plaintiff's subjective complaints.  The ALJ found that while Plaintiff's leg impairment could reasonably be expected to produce the alleged symptoms, his statements regarding its intensity, persistence, and limiting effects did not credibly establish that he was precluded from all work activities.  When a claimant's statements

---

[3]The ALJ did not specifically reference *Stone* in his opinion.  But since *Stone*, the Fifth Circuit has cautioned lower courts not to "wholesale remand" all severity cases for failing to cite *Stone*. *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986).  The critical issue at step two is whether the ALJ applied the correct legal standard, not whether he recited "magic words." *Id.*

concerning the intensity, persistence, or limiting effects of symptoms are not supported by objective evidence, the ALJ has the discretion to make a finding on their credibility. *Foster v. Astrue*, 277 F. App'x. 462 (5th Cir. 2008). The ALJ's determination is entitled to considerable deference and is supported by substantial evidence here.

Plaintiff testified at the administrative hearing that he experiences continued swelling and numbness in his left leg and foot from his 1997 injury. The resulting constant and unremitting pain is allegedly so severe that he cannot walk, sit, or stand for extended periods and has to elevate his leg to obtain relief. Specifically, he testified that he can only sit for 20 minutes before he has to stand up and cannot stand for longer than 15 minutes at a time. He also denied that he can walk more than half-a-block or lift 20 pounds. He testified that he also has difficulty grasping things with his left hand because the bullet entered through that hand, but he acknowledged that he has no difficulty with his dominant right hand. He can also climb stairs, bend at the waist, and kneel, but he cannot squat or crawl. He acknowledges that he can read and write, add, subtract, multiply, and divide, make change, and drive.[4]

The Court notes that Plaintiff did not submit *any* medical evidence in support of his disability claims. The only medical evidence of record is a consultative examination performed by Dr. Christopher Reed in January 2010. Although Plaintiff maintains that the lack of treatment was due to his inability to afford medical care, he has not provided

---

[4]ECF No. 11-2, pp. 18-46.

any objective evidence establishing that he does not qualify for free treatment or treatment at a reduced cost. In fact, when asked at the administrative hearing if he had ever sought such treatment, the transcript reflects that Plaintiff did not directly answer the question. He testified instead that he was treated the month before the hearing for a hand injury he sustained after he tripped and fell. He further acknowledged that he had not received any extensive medical treatment since his gunshot injury in 1997. At any rate, the Court finds that the ALJ denied benefits not because of Plaintiff's inability to afford treatment, but because he failed to prove that his residual leg pain (untreated) was so severe that it prevented him from performing light work activity. *Peebles v. Chater*, 77 F.3d 477 (5th Cir. 1995).[5]

In determining that Plaintiff has the residual functional capacity to perform a reduced range of light work, the ALJ assigned great weight to the consultative examination performed by Dr. Reed in January 2010. Plaintiff informed Dr. Reed that subsequent to the gunshot wound to his left thigh, he underwent an orthopedic surgery to repair his fractured femur. A steel rod was reportedly implanted to stabilize the fracture, but Plaintiff reported that he continues to experience a burning sensation and numbness in his left leg that radiates to his foot on a daily basis. The pain occurs four to five times per day and lasts 10 to 15 minutes, and while he could not identify a triggering factor, he noticed that it occurred more frequently when he walks. Despite this pain, Plaintiff told

---

[5]ECF No. 11-2, pp. 20-21.

Dr. Reed that he could attend to his personal needs, stand and walk for 20 minutes at a time, sit for approximately one hour, and lift up to 50 pounds.  He could also sweep, mop, vacuum, cook, wash dishes, shop, climb stairs, and mow grass without difficulty.[6]

On examination, Dr. Reed noted that Plaintiff was a well-developed, well-nourished male in no acute distress.  There was no evidence of edema, cyanosis, clubbing, swelling, or redness in his upper or lower extremities.  He ambulated with a slight limp which favored his left lower extremity, but he did not use an assistive device during the examination or while entering or exiting the facility.  He also had no difficulty standing up from his chair or getting on and off the examination table.  Physical findings indicated that he had a decreased range of motion in his hip with normal flexion, and that both his internal and external rotation, and his extension were all to 30 degrees.  An examination of his left knee similarly revealed a decreased range of motion with 70 degree flexion, but his straight leg raises were within normal limits in both the sitting and supine positions.  While he could only squat minimally, he could walk on his heels and toes, and perform heel-to-toe maneuvers with only mild difficulty.  He also exhibited a normal range of motion in his elbows, forearms, wrists, shoulders, right hip, right knee, and both ankles, and could grip 5/5 bilaterally.  Based on these examination findings, Dr. Reed opined that Plaintiff had a decreased range of motion and motor strength, and would be functionally limited in his ability to walk and possibly limited in his ability to carry.  However, he

---

[6]ECF No. 11-7, pp. 11-14.

found no evidence of functional limitations in his ability to sit, or in his abilities to see, hear, or speak.[7]

Given this evidence, the ALJ had good cause to assign significant weight to Dr. Reed's opinion as it was consistent with the objective medical evidence and uncontroverted by any other treating or examining physician. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Martinez v. Chater*, 64 F.3d 172 (5th Cir. 1995). Substantial evidence also supports his rejection of a state agency reviewer's opinion that Plaintiff could perform medium work. The examiner had not personally examined Plaintiff and his findings were not well-supported by the evidence. Plaintiff's subjective complaints of pain also indicated that he was more limited than the state agency reviewer opined. *See Scharlow v. Schweiker*, 655 F.2d 645, 648-49 (5th Cir. 1981) (An ALJ's failure to consider subjective complaints of pain is reversible error.). [8]

But the record as a whole did not support the degree of limitations that Plaintiff alleged. Despite his allegations of constant and unremitting pain, Plaintiff acknowledged that he does not take any prescription medication and has not received any recent medical treatment for his leg pain. He testified that he takes over-the-counter medication to alleviate his pain and does not require an assistive ambulative device. He also has no difficulty attending to his personal needs or performing household chores such as

---

[7]ECF No. 11-7, pp. 11-14.

[8]ECF No. 11-7, pp.15-22.

8

sweeping, mopping, vacuuming, cooking, washing dishes, shopping, climbing stairs, and

mowing grass.  By his own admission, he also stopped working in 2006 because of

difficulties with transportation, not because of his leg pain.  As further noted by the ALJ,

his statements concerning the degree of his functional limitations were also inconsistent.

Contrary to his hearing testimony that he could only lift 20 pounds and sit for 20 minutes,

Plaintiff told Dr. Reed that he could lift up to 50 pounds and sit up to one hour.[9]

   Substantial evidence therefore supports the denial of benefits in this case.  The

ALJ considered the intensity, persistence, and limiting effects of Plaintiff's symptoms and

concluded that they were credible only to the extent that his leg pain limited him to a

restricted range of light work.  Although Plaintiff credibly established that he experiences

residual leg pain, the mere fact that working may cause a claimant pain or discomfort

does not mandate a finding of disability, particularly where substantial evidence indicates

that the applicant can work despite being in pain or discomfort, as it does here.  *See Epps*

*v. Harris*, 624 F.2d 1267, 1274 (5th Cir. 1980).

   The Court turns finally to Plaintiff's Motion to Amend/Correct the Record.  For

the *first* time on appeal, Plaintiff argues, inter alia, that evidence relating to his prior

application and cessation of benefits should have been considered.  The record reflects,

however, that Plaintiff testified at length during the administrative proceedings, and

neither *he* nor counsel raised this issue before the ALJ, nor was it submitted to the

---

[9]ECF No. 11-2, pp. 18-46.

Appeals Council.   In this motion, Plaintiff raises a myriad of issues, almost all of which are irrelevant to this proceeding.   Specifically, he requests reconsideration of this Court's denial of appointment of counsel, but he makes no showing of any efforts to obtain new counsel.   He argues that the "record is replete" with medical reports establishing his injury due to the 1997 shooting, and that it "could cause his death in the next 12 months;" that Plaintiff is unable to afford medical care; and, that neither the ALJ, nor the vocational expert, discussed Plaintiff's inability to work at any occupation because of his "terminable impairments."[10]

Plaintiff then argues, alternatively, that the records are legally insufficient because they do not contain a copy of the May 7, 2012, Complaint filed in this case; his applications from 1997 or 2009; or the 2003/2004 records of termination of his 1997 benefits.   He also included an unsworn affidavit, both witnessed and signed by his father, stating that his father has purchased and administered over-the- counter medication to the Plaintiff to relieve his pain.   Attached to his motion as exhibits are the following:

    1) Complaint filed in this case;
    2) Application to Proceed Without Prepaying Fees or Costs;
    3) Letter from Plaintiff's attorney declining to appeal to District Court;
    4) This Court's Order Directing Filing of Briefs;
    5) This Court's Order Denying Appointment of Counsel[11]

---

[10]There is absolutely no medical evidence in the record to support Plaintiff's contention that his injury could cause his death, nor did he testify to such.

[11]ECF Nos. 12-2, pp. 1-13.

At any rate, the fact of Plaintiff's impairment is not in dispute. The issue is its current severity and whether it prevents him from returning to light work.

It is undisputed that the underlying 2009 application is missing from the certified copy of the administrative record.  While the Commissioner notes that an "application summary" forwarded to Plaintiff on October 29, 2009,[12] advises that an electronic copy of his application was stored, it is unclear as to whether a paper copy was ever generated, and if so, whether it was submitted to the ALJ or merely excluded from the administrative record submitted on appeal.  The issue, however, is whether the administrative record as submitted permits meaningful and informed judicial review.  *See Harrison v. PPG Indus., Inc*., 466 U.S. 578, 594 (1980)) (reviewing court may remand if unable to exercise informed judicial review because of inadequate administrative record).  *Brady v. Apfel*, 41 F. Supp. 2d 659, 668 (E.D. Tex. 1999) (affirming denial where documents missing from record would be of *de minimis* value).

The record was sufficient here.  The application summary forwarded to Plaintiff on October 29, 2009, summarizes the information he provided on his application and specifically instructs Plaintiff to confirm its accuracy.  There is no indication that any corrections or modifications were made.  The record also contains numerous disability reports and correspondence between the Commissioner and Plaintiff summarizing his

---

[12] The application summary incorrectly indicates that Plaintiff filed his SSI application on October 23, 2009.

11

disability claims, and Plaintiff has never challenged their accuracy.  *Torres v. Shalaha*, 48 F.3d 887 (5th Cir. 1995) (remand need not be ordered when evidence is missing but there is still ample evidence from which a determination may be made).  None of the other allegations or arguments in Plaintiff's filings on appeal are persuasive, proper, or germane to the denial of his 2009 application of social security benefits.[13]  For these reasons, the Court finds that Plaintiff's motion to amend is not well-taken and should be denied.

It is therefore the opinion of the undersigned United States Magistrate Judge that Plaintiff's Motion to Amend/Correct Record be denied; that Defendant's Motion to Affirm the Commissioner's Decision be granted; that Plaintiff's appeal be dismissed with prejudice; and, that Final Judgment in favor of the Commissioner be entered.

---

[13]In response to the undersigned's order directing Plaintiff to comply with this Court's briefing order before April 8, 2013, Plaintiff has filed a "Response in Oppositions [sic] to the Defendant's Answer to the Plaintiff's Complaint[s]."  In this filing, he reiterates the same arguments and allegations raised in both his Complaint and Motion to Amend/Correct the Record, with the apparent exception of two.  As to the first, he asserts that his constitutional rights were violated because counsel was ineffective in failing to submit medical records related to his previous application of benefits.  The United States Supreme Court "has never recognized a constitutional right to counsel in Social Security proceedings." *Cornett v. Astrue*, 261 F.App'x 644, 651 (5th Cir. 2008) (rejecting ineffective assistance of counsel claim where plaintiff was denied SSI); *see also Russell v. Chater*, 62 F.3d 1421, at *2 (8th Cir. 1995) (ineffective assistance of counsel claim not cognizable in a Social Security appeal).

Second, Plaintiff advises that between 2000 and 2008, his father filed a complaint against the "Hinds County's Mississippi, Supervisor[s], and namely, Honorable Douglas Anderson. . . ." ECF No. 26, p. 13.  He requests that the undersigned magistrate judge recuse herself if she is related to Mr. Anderson.  The undersigned is not related, and Plaintiff's request is hereby denied.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections.  Within 7 days of the service of the objection, the opposing party must either serve and file a response or notify the District Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December 1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

This the 14th day of August 2013.

/s/  Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE